
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CHRISTINA VILLAVICENCIO

          Plaintiff,

– against –

ELIF GURE-PEREZ,

          Defendant.

**MEMORANDUM, ORDER & WITHDRAWAL OF DISMISSAL**

14-CV-0889

[related to 14-CV-0777 and 10-CV-5748]

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ OCT 09 2014 ★
BROOKLYN OFFICE

**JACK B. WEINSTEIN, Senior United States District Judge:**

I.    **Introduction**

In an oral opinion on a motion for summary judgment, argued on October 2, 2014, the court dismissed the case. The case may have been improperly dismissed. *Ex mero motu*, the court now acts to correct a possible injustice.

Throughout a portion of the 2008–2009 school year, plaintiff, a Latina female, worked on probationary status as an assistant principal at P.S. 316, under the supervision of defendant, her principal. She alleged that she had been ordered by Gure-Perez to file false reports against African American teachers at P.S. 316, and that, in retaliation for her refusal to do so, defendant discharged her as assistant principal.

Relying principally on *Leibovitz v. N.Y.C. Transit Auth.*, summary judgment was granted. 252 F.3d 179 (2d. Cir. 2001). The theory of the Court of Appeals for the Second Circuit in *Leibovitz* was that a plaintiff has no cause of action for discrimination that she did not herself observe.

Upon further reflection and examination of decisions not cited by either party, the case is set down for re-argument on defendants' motion for summary judgment.

1

## II. Procedural History

On November 12, 2010, Carolyn Lovejoy and Elizabeth Butler, former teachers at P.S. 316, and Christina Villavicencio, a former assistant principal at the same school, served a joint complaint in state court against the New York City Department of Education ("DOE") and Gure-Perez, their former principal. Defs.' Rule 56.1 Statement ¶ 1, No. 10-CV-5748, Dec. 24, 2013, ECF No. 31. They claimed race- and age-based discrimination and retaliation. Compl. ¶¶ 75-89, No. 10-CV-5748, Dec. 10, 2010, ECF No. 1.

A notice of removal was served transferring the case from state court to the United States District Court for the Eastern District of New York. Notice of Removal, No. 10-CV-5748, Dec. 10, 2010, ECF No. 1; Mem., No. 10-CV-5748, Dec. 17, 2010, ECF No. 2.

Butler's and Villavicencio's claims were severed and dismissed from Lovejoy's case, No. 10-CV-5748. Summ. J. Hr'g Tr. 4:17–18, Jan. 31, 2014. Based on oral rulings, the assumption of the parties was that the claims of Butler and of Villavicencio would be incorporated in new separate actions without the need for further service. The court stated:

> If, within the next ten days, [Butler and Villavicencio] separately file[], ... the[ir] [cases] will be treated as if they had been filed with Ms. Lovejoy's case. ... You don't have to [file] separate complaints. Just file the same complaint in each one of them. ... I don't want ... extra paperwork .... I will address each case as if [it] were properly before me so [you] don't have to come in unnecessarily.

Summ. J. Hr'g Tr. 4:17–5:12.

Defendants moved for summary judgment against Lovejoy, Butler, and Villavicencio. Summ. J. Hr'g Tr. 5:13–25:16 (Lovejoy); 25:17–38:2 (Butler); 38:3–45:15 (Villavicencio). Decision was reserved on the Butler and Villavicencio motions. Summ. J. Hr'g Tr. 47:2–3. The parties stipulated that the hearing record of January 31, 2014 "appl[ies] to all three cases." Summ. J. Hr'g Tr. 45:16–21.

On February 10, 2014, Butler and Villavicencio filed their independent complaints. Decl. of K.C. Okoli ("Okoli Decl.") ¶ 6, No. 14-CV-0777 and No. 14-CV-0889, Sept. 8, 2014, ECF No. 11-1. Counsel for plaintiffs Lovejoy, Butler, and Villavicencio conceded that *Monell* liability did not apply. Summ. J. Hr'g Tr. 8:10–9:3. The court dismissed all 42 U.S.C. §§ 1983 and 1981 claims against defendant DOE. Order, No. 10-CV-5748, Feb. 21, 2014, ECF No. 68.

*Lovejoy* was tried. Order, No. 10-CV-5748, May 21, 2014, ECF No. 90. The jury found Gure-Perez liable for creating a hostile race-based work environment. *Id.* It returned a $110,000 verdict. Minute Entry, No. 10-CV-5748, May 21, 2014, ECF No. 80.

In *Butler* and *Villavicencio*, the court denied Gure-Perez's motion to dismiss on the ground of improper service. It held that both complaints would be treated as having been filed on December 10, 2010, the date on which a notice of removal transferring the case to the United States District Court for the Eastern District of New York was served. Order, No. 10-CV-0777 and 10-CV-0889, Oct. 7, 2014, ECF No. 16. DOE was dismissed as a defendant. *Id.* New York City Human Rights Law claims against Gure-Perez were dismissed. *Id.* The court allowed the Butler action to proceed. *Id.*

Orally dismissed was the case of Villavicencio. Hr'g Tr. Oct. 2, 2014. That dismissal is now put in question on the court's own motion.

### III. Facts

Villavicencio started working as a DOE employee in 1994. Compl. ¶ 29. From 2008 to 2009, she was employed at P.S. 316 as an assistant principal on probationary status. *Id.* ¶ 32. She worked under the supervision of defendant, Principal Elif Gure-Perez. *Id.* ¶ 12.

After Gure-Perez was appointed principal of P.S. 316, she instructed Villavicencio to "aggressively supervise 'older staff members' at PS 316 to shake them up." *Id.* All of these staff

members were minorities, and all but one was African-American. *Id.* ¶¶ 12, 20. The principal directed Villavicencio to re-observe two African-American teachers whom Villavicencio had rated "Satisfactory" because Gure-Perez "wanted these teachers to be rated Unsatisfactory . . . because they were 'old' and African Americans." *Id.* ¶¶ 14–15. She instructed Villavicencio to use "fear" and "intimidation" against a third teacher in order to "make her retire." *Id.* ¶ 16. When Villavicencio suggested to Gure-Perez that "it would be fair to give these [minority] staff members . . . a little time before they were formally observed and/or evaluated[,] [Gure-]Perez sneered: 'So you think these teachers are entitled to work in this building?'" *Id.* ¶ 20.

According to Villavicencio, she "refused to be [Perez's] tool for the discriminatory treatment of African Americans and older staff at PS 316," toward whom Perez showed "blatant disrespect . . . in the presence of students and others, using intimidating language, threats of arrest and/or dismissal, excessive write-ups, and forceful suggestions of retirement." *Id.* ¶¶ 15, 17, 21, 22, 58. Plaintiff did not provide older African American teachers with unwarranted "Unsatisfactory" ratings as ordered, and refused to follow Perez's "instructions to use intimidation, fear, excessive false write-ups, and other foul tactics" on older African American teachers "so P[erez] could get rid of those individuals from PS 316." *Id.* ¶ 15, 57–58.

The complaint charges that once Gure-Perez realized plaintiff would not take part in "her plan to use trumped-up write-ups, fraudulent evaluations and false pretenses to get rid of older African American staff at PS 316," the principal "began to nitpick and find non-existent fault with Villavicencio's work." *Id.* ¶¶ 21, 57. In March 2009, Gure-Perez started to "creat[e] [a] false paper trail to get rid of Villavicencio from PS 316," criticizing her for not clocking in for the month of November and telling Villavicencio that she did not have a "backbone to write up teachers." *Id.* ¶¶ 23–24, 27. In a single day, March 17, 2009, Gure-Perez placed seven

4

disciplinary letters in Villavicencio's file. *Id.* ¶ 31. On March 26, 2009, Gure-Perez gave plaintiff the first "Unsatisfactory" rating of her career, together with a notice of discontinuance of her probationary service as assistant principal. *Id.* ¶ 32.

Villavicencio was reassigned to P.S. 191 on April 2, 2009, under the supervision of Principal Capolongo. *Id.* ¶¶ 35, 37. Capolongo, a friend of Gure-Perez, told Villavicencio on multiple occasions: "'I'm not Ms. [Gure-]Perez and not one to mess around with.'" *Id.* ¶ 38. The complaint indicates that Gure-Perez encouraged Capolongo to give Villavicencio a hard time. *Id.* ¶ 44. A few days after Villavicencio started working at P.S. 191, Capolongo told Villavicencio to come to her office with a United Federation of Teachers ("UFT") representative because the meeting could lead to disciplinary action. *Id.* ¶ 40. The UFT chapter leader advised Villavicencio to leave the school because "[Capolongo and her friends] are after you." *Id.* ¶ 41.

Claimed is that, in May 2009, the experiences with Gure-Perez and Capolango led Villavicencio to take medical leave due to anxiety and depression. Compl. ¶ 43. Villavicencio was prescribed medication and therapy for her condition. *Id.*

## IV. Law

A line of cases from the Supreme Court of the United States and the Court of Appeals for the Second Circuit suggest that a plaintiff has a 42 U.S.C. § 1981 cause of action for retaliation against a superior if she or he was retaliated against for attempting to prevent discrimination at the direction of a superior. This line of cases includes the following:

- *Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 868 (2011) (finding that third-party reprisals are not categorically excluded from operation of Title VII's antiretaliation provision);

5

- *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 452–54 (2008) (holding that a cognizable Section 1981 retaliation claim includes a claim by an individual who suffers retaliation for having tried to help a person allegedly discriminated against);

- *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 179–81 (2005) (finding that a school coach could assert a retaliation claim even though he was not a victim of the discrimination that was the subject of his original complaints);

- *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 237 (1969) (holding that a person has standing to bring suit under the Civil Rights Act if she or he can show that she or he was "punished for trying to vindicate the rights of minorities");

- *Albert v. Carovano*, 851 F.2d 561, 572–73 (2d Cir. 1988) (explaining that, under the case law, "non-minority plaintiffs may bring an action under Section 1981 against one who has retaliated against them because they did *not* engage in purposeful racial discrimination") (emphasis in original);

- *Hudson Valley Freedom Theater, Inc. v. Heimbach*, 671 F.2d 702, 706–7 (2d Cir. 1982) (holding that a corporation had standing to challenge discriminatory practices that led to the cutting off of its grant funding); and

- *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 311–12 (2d Cir.), *modified on other grounds*, 520 F.2d 409 (1975) (finding that a white employee had standing under the Civil Rights Act to sue his employer for allegedly forcing him into premature retirement solely because he had sold his house in a neighborhood inhabited primarily by white employees to a black fellow employee).

None of these opinions have been cited by the parties.

## V. Application of Law to Facts

The cases cited in *supra* Part IV provide grounds for distinguishing the decision in *Leibovitz*, the primary basis for granting defendant's motion for summary judgment, from Villavicencio's claims. *See* Hr'g Tr. Oct. 2, 2014.

## VI. Conclusion

The motion for summary judgment on Villavicencio's 42 U.S.C. § 1981 retaliation claim will be reargued on October 23, 2014 at 10:00 a.m.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: October 8, 2014
Brooklyn, New York