UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CHRISTINA VILLAVICENCIO

        Plaintiff,

  – against –

ELIF GURE-PEREZ,

        Defendant.

**MEMORANDUM, ORDER &
JUDGMENT**

14-CV-0889
[related to 14-CV-0777
and 10-CV-5748]

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 0 4 2014 ★

BROOKLYN OFFICE

**Parties**

Christina Villavicencio

Elif Gure-Perez

**Appearances**

Kenechukwu Chudi Okoli
K.C. Okoli, Attorney at Law
330 Seventh Avenue, 15th Floor
New York, NY 10001
(212) 564-8152
Fax: (212) 268-3443
Email: kcokoli@verizon.net

Leah S. Schmelzer
New York City Law Department
Office of the Corporation Counsel
100 Church Street
New York, NY 10007
(212) 356-2016
Fax: (212) 442-6865
Email: lschmelz@law.nyc.gov

1

**JACK B. WEINSTEIN, Senior United States District Judge:**

## Table of Contents

I.  Introduction ..................................................................................................................2
II.  Procedural History .........................................................................................................3
III.  Facts ..............................................................................................................................5
IV.  Summary Judgment Standard .........................................................................................8
V.  Law...............................................................................................................................10
  A.  Statutes ...................................................................................................................10
  B.  Exhaustion of Administrative Remedies Standard .....................................................10
  C.  Retaliation Claim Standard under Section 1983 of Title 42 (Free Speech Rights) ...........10
  D.  Retaliation Claim Standard under Section 1981 of Title 42 (Racial Discrimination) ........12
    1.  Standing ..............................................................................................................12
    2.  Plaintiff's Burden:  Prima Facie Case....................................................................14
    3.  Employer's Burden:  Articulate Non-Retaliatory Reason for Employment Action .......17
    4.  Plaintiff's Renewed Burden:  Establish Pretext for Employment Action.......................18
VI.  Application of Law to Facts ..........................................................................................18
  A.  Retaliation Claim under Section 1983 of Title 42 (Free Speech Rights)...........................18
  B.  Retaliation Claim under Section 1981 of Title 42 (Racial Discrimination) ......................19
VII.  Conclusion...................................................................................................................21

## I.    Introduction

In a case of apparent first impression, the court finds that ordering a subordinate to discriminate against fellow employees on the basis of their race, then retaliating against her when she refuses, is a violation of Section 1981 of Title 42 of the United States Code.  Sufficient evidence supports a finding for plaintiff on that theory.  Defendant's motion for summary judgment is denied.

In September 2008, Christina Villavicencio, a Latina female, had been employed by the New York City Department of Education ("DOE") for fifteen years.  During the 2008–2009 school year, under the supervision of Principal Elif Gure-Perez, Villavicencio served as an assistant principal at P.S. 316.  Her status was probationary.

Villavicencio allegedly refused to follow the orders of Gure-Perez and file false reports against African American teachers at P.S. 316.  Because of this refusal, it is contended, Gure-

Perez fired her as assistant principal, resulting in a salary reduction and reassignment to another school.

A claim under Section 1983 of Title 42 for violation of free speech rights is denied because the speech related to internal school administration.

The claim under Section 1981 of Title 42 for retaliation survives. A reasonable juror could find that Gure-Perez retaliated against Villavicencio because of her refusal to participate in a program of discrimination. Plaintiff is in the same legal and factual position as if she had herself been discriminated against on the basis of race.

## II.    Procedural History

On November 12, 2010, Carolyn Lovejoy and Elizabeth Butler, former teachers at P.S. 316, and Christina Villavicencio, a former assistant principal at the same school, served a joint complaint in state court against the DOE and Gure-Perez, their former principal. Defs.' Rule 56.1 Statement ¶¶ 1, 5, 11, 30, No. 10-CV-5748, Dec. 24, 2013, ECF No. 31. They claimed race- and age-based discrimination and retaliation. Compl. ¶¶ 75–89, No. 10-CV-5748, Dec. 10, 2010, ECF No. 1.

A notice of removal was served transferring the case to this court. Notice of Removal, No. 10-CV-5748, Dec. 10, 2010, ECF No. 1; Mem., No. 10-CV-5748, Dec. 17, 2010, ECF No. 2.

Severed from Lovejoy's case were Butler's and Villavicencio's claims. Summ. J. Hr'g Tr. 4:17–18, No. 10-CV-5748, Jan. 31, 2014, ECF No. 77. Without the need for further service, these claims were then incorporated in new separate actions. The court stated: "If, within the next ten days, [Butler and Villavicencio] separately file[], . . . the[ir] [cases] will be treated as if

they had been filed with Ms. Lovejoy's case. . . . I will address each case as if [it] were properly before me . . . ." *Id.* at 4:17–5:12.

Defendants moved for summary judgment in the cases brought by Lovejoy, Butler, and Villavicencio. *Id.* at 5:13–25:16 (Lovejoy); 25:17–38:2 (Butler); 38:3–45:15 (Villavicencio). Summary judgment was denied in *Lovejoy*; decision was reserved on these motions in *Butler* and *Villavicencio*. *Id.* at 25:13, 47:2–3. The parties stipulated that the hearing record of January 31, 2014 "appl[ies] to all three cases." *Id.* at 45:16–21. In all three cases, counsel for plaintiffs conceded that *Monell* liability did not apply. *Id.* at 8:10–9:3. The court dismissed all 42 U.S.C. §§ 1983 and 1981 claims against defendant DOE in *Lovejoy*. Order, No. 10-CV-5748, Feb. 21, 2014, ECF No. 68.

After the court denied summary judgment in *Lovejoy*, the case was tried. Order, No. 10-CV-5748, May 21, 2014, ECF No. 90. The jury found Gure-Perez liable for creating a hostile race-based work environment. *Id.* It returned a $110,000 verdict. Minute Entry, No. 10-CV-5748, May 21, 2014, ECF No. 80.

On February 10, 2014, Butler and Villavicencio filed independent complaints. Decl. of K.C. Okoli ¶ 6, Nos. 14-CV-0777 and 14-CV-0889, Sept. 8, 2014, ECF Nos. 11-1.

Denied were Gure-Perez's motions to dismiss on the ground of improper service in *Butler* and *Villavicencio*. Order, Nos. 10-CV-0777 and 10-CV-0889, Oct. 7, 2014, ECF Nos. 16. Both complaints were treated as having been filed on December 10, 2010, the date on which a notice of removal transferring the case to the United States District Court for the Eastern District of New York was served. *Id.* DOE was dismissed as a defendant. *Id.* New York City Human Rights Law claims against Gure-Perez were dismissed. *Id.* *Butler* was allowed to proceed. Order, No. 14-CV-0777, Oct. 7, 2014, ECF No. 16. It is set for trial in January 2015. *Id.*

*Villavicencio* was dismissed on defendant's motion for summary judgment. Hr'g Tr., Oct. 2, 2014, No. 14-CV-0889. Dismissal was withdrawn on October 8, 2014. Order, No. 14-CV-0889, Oct. 8, 2014, ECF No. 17. The case was set down for re-argument on the motion for summary judgment. *Id.* Further research revealed "grounds for distinguishing the decision in *Leibovitz* [*v. N.Y.C. Transit Auth.*, 252 F.3d 179 (2d Cir. 2001)], the primary basis for originally granting defendant's motion for summary judgment," from Villavicencio's claim of retaliation. *Id.*

## III.    Facts

The "facts" stated below are based on allegations of plaintiff supported by admissible evidence.

Villavicencio started working as a DOE employee in 1994. Compl. ¶ 29, No. 10-CV-0777, Feb. 10, 2014, ECF No. 1. From 2008 to 2009, she was employed at P.S. 316 as an assistant principal on probationary status. *Id.* ¶¶ 10, 32. She worked under the supervision of defendant, Principal Elif Gure-Perez. *Id.* ¶ 12.

Gure-Perez's racism against African Americans became known to Villavicencio before Gure-Perez became principal of P.S. 316. In April or May 2008, Gure-Perez asked Villavicencio: "How is Shining?" *Id.* ¶ 45. This was an uncomplimentary reference to African American teacher Tracy Collins. *Id.* ¶¶ 46, 48.

As principal of P.S. 316, Gure-Perez's racism became more blatant. At the first faculty conference, on August 28, 2008, Gure-Perez made references to, and read, "Old Black Joe." *Id.* ¶¶ 49, 50. Most of the teachers present took offense to the reading of the story, but "[c]oncerned about reprisals, these staff members said nothing" to Gure-Perez. *Id.* ¶ 50. One assistant principal, Martin Williams, a Black Caribbean male, later complained to Chancellor Joel Klein

and was "promptly reassigned . . . within 24 hours of that complaint to the . . . Rubber Room

[*i.e.*, the DOE's temporary holding facility for teachers awaiting arbitration hearings regarding

alleged misconduct)] where [he] remained for months on trumped-up charges." *Id.* ¶¶ 13, 19, 51.

In September, Gure-Perez told Villavicencio: "I bought me a bright orange blouse to wear to

school since I know Black people like loud colors." *Id.* ¶ 54. In October, she informed

Villavicencio that she planned to "marginalize" the work of a specific African American teacher

in the school." *Id.* ¶ 56. "At the time [she] made this comment, [Gure-Perez] had already told . .

. Villavicencio to severely supervise and scrutinize . . . [older] African American [staff

members]" at P.S. 316 and "to shake them up." *Id.* ¶¶ 12, 56.

In January or February 2009, defendant directed Villavicencio to re-observe two African

American teachers Villavicencio had rated "Satisfactory"; Gure-Perez "wanted these teachers to

be rated Unsatisfactory . . . because they were 'old' and African Americans." *Id.* ¶¶ 14–15. She

instructed Villavicencio to use "fear" and "intimidation" against a third minority teacher in order

to "make her retire." *Id.* ¶ 16. When Villavicencio suggested to Gure-Perez that "it would be

fair to give these [minority] staff members . . . a little time before they were formally observed

and/or evaluated[,] [Gure-]Perez [responded]: 'So you think these teachers are entitled to work

in this building?'" *Id.* ¶ 20.

Villavicencio claims she "refused to be [Gure-Perez's] tool for the discriminatory

treatment of African Americans and older staff at PS 316," toward whom Gure-Perez showed

"blatant disrespect . . . in the presence of students and others, using intimidating language, threats

of arrest and/or dismissal, excessive write-ups, and forceful suggestions of retirement." *Id.* ¶¶

15, 17, 21, 22, 58. In Villavicencio's presence, Gure-Perez "never . . . address[ed] the three or

four Caucasian staff at PS 316 with disrespect or [the] insulting tone and language which she showed toward African Americans." *Id.* ¶ 59.

Plaintiff did not provide older African American teachers with unwarranted "Unsatisfactory" ratings as ordered around January or February 2009. *Id.* ¶ 14. She refused to follow Gure-Perez's "instructions to use intimidation, fear, excessive false write-ups, and other foul tactics" on older African American teachers "so [Gure-Perez] could get rid of those individuals from PS 316." *Id.* ¶ 15, 57–58.

The complaint charges that once Gure-Perez realized plaintiff would not take part in "her plan to use trumped-up write-ups, fraudulent evaluations and false pretenses to get rid of older African American staff at PS 316," the principal "began to nitpick and find non-existent fault with Villavicencio's work." *Id.* ¶¶ 21, 57. On or about January 21, 2009, Gure-Perez "informed Villavicencio of an allegation of 'theft of services'. . . . [that she] later told Villavicencio . . . was unsubstantiated." *Id.* ¶ 25. Gure-Perez told Villavicencio that her investigation showed that Villavicencio did not clock in for the month of November. *Id.* ¶ 26. On or about February 6, 2009, Gure-Perez accused Villavicencio of having "'very poor supervisory skills'" and told her that she did not have the "'backbone to write up teachers.'" *Id.* ¶ 27. Three days later, Gure-Perez placed Villavicencio's first disciplinary letter in her file. *Id.* ¶ 29. On or about February 13, 2009, Gure-Perez told Villavicencio to start looking for another job. *Id.* ¶ 30.

By March 2009, Gure-Perez had started to "creat[e] [a] false paper trail to get rid of Villavicencio from PS 316." *Id.* ¶ 23. In a single day, March 17, 2009, Gure-Perez placed seven disciplinary letters in Villavicencio's file. *Id.* ¶ 31. On March 26, 2009, Gure-Perez gave plaintiff the first "Unsatisfactory" rating of her career, together with a notice of discontinuance of her service as assistant principal. *Id.* ¶ 32.

Villavicencio was reassigned to P.S. 191 on April 1, 2009, effective April 2, 2009, under the supervision of Principal Elsi Capolongo. *Id.* ¶¶ 35, 37. Capolongo, a friend of Gure-Perez, told Villavicencio on multiple occasions: "'I'm not Ms. [Gure-]Perez and not one to mess around with.'" *Id.* ¶ 38. The complaint indicates that Gure-Perez encouraged Capolongo to give Villavicencio a "hard time." *Id.* ¶ 44. A few days after Villavicencio started working at P.S. 191, Capolongo told Villavicencio to come to her office with a United Federation of Teachers ("UFT") representative because the meeting could lead to disciplinary action. *Id.* ¶ 40. The UFT chapter leader advised Villavicencio to leave the school because "[Capolongo and her friends] are after you." *Id.* ¶ 41.

It is claimed that, in May 2009, the experiences with Gure-Perez and Capolongo led Villavicencio to take medical leave because of anxiety and depression. *Id.* ¶ 43. Villavicencio was prescribed medication and therapy. *Id.*

## IV.    Summary Judgment Standard

Summary judgment will be granted when it is shown that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) ("Summary judgment is warranted when, after construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact."). "No genuine issue exists if, on the basis of all the pleadings, affidavits and other papers on file, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, it appears that the evidence supporting the non-movant's case is so scant that a rational jury could not find in its favor." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

If the movant meets this burden, the non-moving party must provide "specific facts

showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

250 (1986) (internal quotation marks omitted). "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary

judgment." *Id.* at 248. Evidence offered to demonstrate a genuine dispute regarding a material

fact must consist of more than "conclusory allegations, speculation or conjecture." *Cifarelli v.

Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996). "If the non-movant fails to come forth with

evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an

essential element of the claim, summary judgment is granted." *Guisto v. Stryker Corp.*, 293

F.R.D. 132, 135 (E.D.N.Y. 2013) (internal quotation marks omitted) (quoting *Burke v. Jacoby*,

981 F.2d 1372, 1379 (2d Cir. 1992)).

The Court of Appeals for the Second Circuit has "repeatedly expressed the need for

caution about granting summary judgment to an employer in a discrimination case where . . . the

merits turn on a dispute as to the employer's intent." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137

(2d Cir. 2008); *see also, e.g.*, *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013)

(same); *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994) ("A grant of

summary judgment [in an employment discrimination case] is proper only if the evidence of

discriminatory intent is so slight that no rational jury could find in plaintiff's favor."). This

analysis logically extends to the supervisors of employees sued under the Civil Rights Act.

## V.    Law

### A.    Statutes

Plaintiff sues under sections 1983 and 1981 of Title 42 of the United States Code.

Section 1983 protects the right to free speech of government employees, *see e.g.*, *Connick v.*

*Myers*, 461 U.S. 138 (1983), such as an assistant principal in a public school.  It reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of
> any State . . . subjects, or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party injured in an
> action at law.

42 U.S.C. § 1983.

Section 1981 protects against a deprivation of contract rights as a result of illegal

discrimination.  *CBOCS W., Inc. v. Humphries*, 553 U.S. 442 (2008).  It reads: "All persons

within the jurisdiction of the United States shall have the same right in every State . . . to . . . the

full and equal benefit of all laws and proceedings for the security of persons . . . as is enjoyed by

white citizens . . . ."  42 U.S.C. § 1981.

### B.    Exhaustion of Administrative Remedies Standard

Claims brought under Sections 1983 and 1981 of Title 42 do not require exhaustion of

administrative remedies before suing in federal court.  *See e.g.*, *Johnson v. Cnty. of Nassau*, 411

F. Supp. 2d 171, 180–181 (E.D.N.Y. 2006).

### C.    Retaliation Claim Standard under Section 1983 of Title 42 (Free Speech Rights)

"[A] public employee does not relinquish First Amendment rights to comment on matters

of public interest by virtue of government employment."  *Connick*, 461 U.S. at 140.  "Vigilance

is necessary to ensure that public employers do not use authority over employees to silence

10

discourse, not because it hampers public functions but simply because superiors disagree with the content of employees' speech." *Rankin v. McPherson*, 483 U.S. 378, 384 (1987).

To establish a prima facie retaliation claim for violation of a public employee's First Amendment right to free speech, a plaintiff must show that: "(1) [the] speech addressed a matter of public concern, (2) [the speaker] suffered an adverse employment decision, and (3) a causal connection exists between [the] speech and that adverse employment decision." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006).

Two inquiries are central in determining if a public employee's speech is entitled to constitutional protection: (1) "whether the employee spoke as a citizen on a matter of public concern," and, if so, (2) "whether the relevant government entity [or supervisor] had an adequate justification for treating the employee differently from any other member of the general public." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).

First Amendment rights of public employees have been sharply restricted by the Supreme Court and the Court of Appeals for the Second Circuit. If the answer to the first inquiry—speech is a matter of public concern—is "no," "the employee has no First Amendment cause of action based on his or her employer's [or supervisor's] reaction to the speech." *Id.* "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. If a plaintiff speaks pursuant to her official duties, her speech is not protected by the First Amendment, regardless of whether her speech relates to a "matter of public concern." *See Weintraub v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, 593 F.3d 196, 201 (2d Cir. 2010) (internal quotation marks and citation omitted).

If the answer to the first inquiry is "yes," the court moves to the second part of the test—

questioning whether "an adequate justification [exists] for treating the employee differently from

any other member of the general public." *Garcetti*, 547 U.S. at 418. Justification requires

arriving "at a balance between the interests of the [employee], as a citizen, in commenting upon

matters of public concern and the interest of the State, as an employer, in promoting the

efficiency of the public services it performs through its employees." *Pickering v. Bd. of Ed. of

Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563, 568 (1968).

### D. Retaliation Claim Standard under Section 1981 of Title 42 (Racial Discrimination)

#### 1. Standing

Cases in the Supreme Court and the Court of Appeals for the Second Circuit support the

rule that a plaintiff has a cause of action under Section 1981 of Title 42 against a specific

superior for retaliation based upon a refusal to discriminate at the direction of the superior. *See

Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 868 (2011) (finding that third-party reprisals

are not categorically excluded from operation of Title VII's antiretaliation provision); *CBOCS

W., Inc.*, 553 U.S. at 452–54 (holding that a cognizable Section 1981 retaliation claim includes a

claim by an individual who suffers retaliation for having tried to help a person allegedly

discriminated against); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 179–81 (2005)

(finding that a school coach could assert a retaliation claim even though he was not a victim of

the discrimination that was the subject of his original complaints); *Sullivan v. Little Hunting

Park, Inc.*, 396 U.S. 229, 237 (1969) (holding that a person has standing to bring suit under the

Civil Rights Act if she or he can show that she or he was "punished for trying to vindicate the

rights of minorities"); *Albert v. Carovano*, 851 F.2d 561, 572–73 (2d Cir. 1988) (explaining that,

under the case law, "non-minority plaintiffs may bring an action under Section 1981 against one

who has retaliated against them because they did *not* engage in purposeful racial discrimination")
(emphasis in original); *Hudson Valley Freedom Theater, Inc. v. Heimbach*, 671 F.2d 702, 706–
07 (2d Cir. 1982) (holding that a corporation had standing to challenge discriminatory practices
that led to the cutting off of its grant funding); *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306,
311–12 (2d Cir.), *modified on other grounds*, 520 F.2d 409 (1975) (finding that white employee
had standing under the Civil Rights Act to sue employer for allegedly forcing him into premature
retirement solely because he had sold his house in a neighborhood inhabited primarily by white
employees to a black fellow employee).

According to the Court of Appeals for the Second Circuit, plaintiff does not have a cause
of action for discrimination that she did not herself observe or participate in. *Leibovitz v. N.Y.C.
Transit Auth.*, 252 F.3d 179 (2d Cir. 2001). Nevertheless, she "may sue someone who has
retaliated against [her] because [she] did *not* engage in purposeful racial discrimination," *Albert*,
851 F.2d at 572–573 (emphasis in original). An individual "punished for trying to vindicate the
rights of . . . minorities has standing to sue under [Section] 1981." *DeMatteis*, 511 F.2d at 312,
312 n.9 (internal quotation marks omitted). "[R]etaliation claims extend to those who oppose
discrimination against others." *Jackson*, 544 U.S. at 180. "[S]ometimes adult employees are the
only effective adversaries of discrimination in schools." *Id.* at 181 (internal quotation marks
omitted).

This court's *Leibovitz v. N.Y.C. Transit Auth.* opinion ruled that an employee was
discriminated against if her coworkers were being discriminated against on invidious grounds.
4 F. Supp. 2d 144, 152 (E.D.N.Y. 1998). The Court of Appeals for the Second Circuit reversed,
finding that too broad a statement of the law given the *Leibovitz* facts. 252 F.3d 179 (2d Cir.

2001). Based on this holding of the Court of Appeals, the analogous passage in the district

court's opinion in *Leibovitz* is modified to read in the present opinion as follows:

> As a matter of judicial notice for purposes of determining public policy and substantive
> law, the court finds that most responsible persons in the United States would be
> distressed at observing others' suffering and being asked to participate in further
> causative abuse. The Supreme Court recognizes that Civil Rights statutes afford
> employees the right to work in an environment free from discriminatory intimidation,
> ridicule, and insult. *Retaliation for refusing an order to assist in a program of
> discrimination is impermissible.*

*Compare* to language in 4 F. Supp. 2d at 152, *rev'd*, 252 F.3d 179 (2d Cir. 2001). As the

Supreme Court recognized in *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*:

> If it were clear law that an employee who reported discrimination . . . could be penalized
> with no remedy, prudent employees would have a good reason to keep quiet about
> [discrimination] offenses against themselves or against others. This is no imaginary
> horrible given the documented indications that fear of retaliation is the leading reason
> why people stay silent instead of voicing their concerns about bias and discrimination.
> . . . Nothing in the [Civil Rights] statute's text or our precedent supports this catch–22.

555 U.S. 271, 277 (2009).

### 2.    Plaintiff's Burden: Prima Facie Case

Retaliation under Section 1981 is analyzed under the same standards as a Title VII

retaliation claim. *See, e.g., Little v. N.E. Util. Serv. Co.*, 299 F. App'x 50, 52 (2d Cir. 2008)

(citing *CBOCS West, Inc.*, 553 U.S. at 455–57)). To make out a prima facie retaliation case, a

plaintiff must demonstrate that: "(1) she engaged in protected activity; (2) the employer was

aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a

causal connection between the protected activity and that adverse action." *Kelly v. Howard I.

Shapiro & Assocs. Consulting Eng'gs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013). The plaintiff's

burden on a motion for summary judgment is de minimis. *Hicks v. Baines*, 593 F.3d 159, 164–

65 (2d Cir. 2010). "The trial court's role in evaluating a summary judgment request is to

determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Id.* (internal quotation marks and citation omitted).

### a.     First Prong: Engagement in Protected Activity

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000). "While a protected activity generally involves the filing of a formal complaint of discrimination with an administrative agency, the [Court of Appeals for the] Second Circuit has recognized that protected activity includes informal protests of discriminatory employment practices, including making complaints to management." *Benedith v. Malverne Union Free Sch. Dist.*, No. 11-CV-5964(ADS)(GRB), 2014 WL 4056554, at *29 (E.D.N.Y. Aug. 15, 2014) (internal quotation marks and citation omitted).

### b.     Second Prong: Employer's Awareness of Protected Activity

"[I]nformal complaints must be sufficiently specific to make it clear that the employee is complaining about conduct prohibited by federal law." *Id.* "[I]mplicit in the requirement that the employer [was] aware of the protected activity is the requirement that [the employer] understood, or could reasonably have understood, that the plaintiff's opposition was directed at [prohibited] conduct." *Galdieri-Ambrosini v. Nat. Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998). "[P]articular words such as 'discrimination' are certainly not required to put an employer on notice of a protected complaint." *Kelly*, 716 F.3d at 17.

The Supreme Court recognizes that opposition can be manifested subtly and without uttering a firm "no":

> "Oppose" goes beyond "active, consistent" behavior in ordinary discourse, where we would naturally use the word to speak of someone who has taken no action at all to advance a position beyond disclosing it. Countless people were known to "oppose" slavery before Emancipation, or are said to "oppose" capital punishment today, without

writing public letters, taking to the streets, or resisting the government. And we would call it "opposition" if an employee took a stand against an employer's discriminatory practices not by "instigating" action, but by standing pat, say, by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons.

*Crawford*, 555 U.S. at 277.

The Court of Appeals for the Second Circuit has held that when "indicia of discrimination are properly presented, the remarks can no longer be deemed 'stray,' and the jury has a right to conclude that they bear ominous significance." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998); *see also Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 145, 149 (2d Cir. 2010) (finding that district court should not have excluded evidence of supervisor's alleged race-based remarks, asking female African American employee "what are you doing at home? Sticking pins in a doll? What have I ever done to you?" and mocking Hispanic employee by pulling down his pants so his waistband was around his thighs, making gestures imitating Hispanic youth, and commenting "Is (employee) the kind of guy to wear his pants hanging down like this?").

### c.    Third Prong: Materially Adverse Employment Action

The term "materially adverse action" refers to one or more actions that change the terms and conditions of an individual's employment. *See, e.g., Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006). The action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* Termination satisfies the third prong of the prima facie retaliation test, *i.e.*, that the employee suffered a materially adverse action. *See, e.g., Lewis v. N.Y.C. Transit Auth.*, No. 04-CV-2331(SLT)(MDG), 2014 WL 1343248, at *15 (E.D.N.Y. Mar. 31, 2014) (holding that an "adverse employment action" includes "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits,

significantly diminished material responsibilities, or other indices unique to a particular situation") (citing *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000))).

### d.    Fourth Prong: Causal Connection between Adverse Action and Protected Activity

"Proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). The Court of Appeals for the Second Circuit has indicated that up to a seven-month gap between protected activity and an adverse employment action is "not prohibitively remote." *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("[W]e have previously held that five months is not too long to find the causal relationship."). "We have not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009).

### 3.    Employer's Burden: Articulate Non-Retaliatory Reason for Employment Action

"Once the plaintiff has established a prima facie showing of retaliation, the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013). "After the defendant has articulated a non-retaliatory reason for the employment action, the presumption of retaliation arising from the establishment of the prima facie case drops from the picture." *Id.* "Federal courts do not have a 'roving commission to review business judgments,' and may not 'sit as

super personnel departments, assessing the merits—or even the rationality—of employers' non-discriminatory business decisions.'" *Greene v. Brentwood Union Free Sch. Dist.*, 966 F. Supp. 2d 131, 156 (E.D.N.Y. 2013) (citations omitted).

### 4.   Plaintiff's Renewed Burden:  Establish Pretext for Employment Action

In order to successfully rebut an employer's purported non-discriminatory reason for the employment action, the plaintiff must establish pretext. *Id.* Retaliation must be shown as the "but-for" cause of the adverse action. The standard for establishing pretext is summarized as follows:

> The Supreme Court recently held that a plaintiff alleging retaliation in violation of Title VII must show that retaliation was a "but-for" cause of the adverse action, and not simply a "substantial" or "motivating" factor in the employer's decision. However, "but-for" causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive.

> A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action.

> . . .

> The determination of whether retaliation was a "but-for" cause, rather than just a motivating factor, is particularly poorly suited to disposition by summary judgment, because it requires weighing of the disputed facts, rather than a determination that there is no genuine dispute as to any material fact.

*Kwan*, 737 F.3d at 845–46 (citations omitted), 846 n.5.

## VI.   Application of Law to Facts

### A.   Retaliation Claim under Section 1983 of Title 42 (Free Speech Rights)

Villavicencio cannot establish a prima facie retaliation claim under Section 1983. The speech at issue involves her refusal to rate teachers "Unsatisfactory" and a statement she made to Gure-Perez about providing teachers with more time before formal observations and evaluations.

Villavicencio's speech was made pursuant to her official state duties. Compl. ¶¶ 14–15, 17, 20, No. 10-CV-0889, Feb. 10, 2014, ECF No. 1. Even if this language related to racism, a "matter of public concern," it is not protected under the First Amendment. *See supra* Part V.C. Villavicencio was not engaging in the speech as a citizen. Her speech was pursuant to her role as assistant principal and was directed only to her supervisor as part of the internal work involving the operation of the school.

Because Villavicencio cannot satisfy the first prong of the free speech inquiry, the second prong need not be addressed.

Villavicencio's Section 1983 claim is dismissed.

### B.    Retaliation Claim under Section 1981 of Title 42 (Racial Discrimination)

There is a question of material fact regarding whether Villavicencio was retaliated against because she refused to engage in racial discrimination. Construing the facts in the light most favorable to plaintiff, Villavicencio can make out a prima facie case of retaliation under the Section 1981 retaliation test and sufficiently establish pretext. *See supra* V.D.2-4.

*First*, Villavicencio's refusal to promote racial discrimination is protected activity. *See supra* Part V.D.2.a. By (1) refusing to provide older African American teachers with unjustified "Unsatisfactory" ratings and (2) suggesting to Gure-Perez that she provide these teachers with more lead time before formal observations and evaluations, Villavicencio informally protested discriminating against her colleagues. Compl. ¶¶ 14–15, 17, 20.

*Second*, these actions were sufficiently specific to make it clear to Gure-Perez that Villavicencio was complaining about race-based discrimination. *See supra* Part V.D.2.b. At the hearing, defendant argued that Villavicencio's claim is barred by *Galdieri-Ambrosini*, 136 F.3d at 276. *See* Hr'g Tr., Oct. 24, 2014. *Galdieri-Ambrosini* is inapposite. In that case, the Court of

19

Appeals for the Second Circuit was not ruling on a motion for summary judgment; rather, it was assessing a trial transcript in light of a Rule 50 motion. *Id.* at 279–81. *Galdieri-Ambrosini* held that an employee who complained about having to perform personal tasks for an executive did not express her opposition to gender discrimination. *Id.* at 292. The court explained that plaintiff's complaining to her supervisors that (1) two other female employees were "slackers," and (2) she "ha[d] to do work on [a male supervisor's] personal matters" did not support the proposition that plaintiff put her employer on notice that she was complaining about gender discrimination. *Id.*

In the instant case, Gure-Perez's behavior at P.S. 316 with respect to African Americans strongly suggests that racism played a role in the manner in which she ran the school and that her order to Villavicencio to re-observe two older African American teachers was not race-neutral. *See* Compl. ¶¶ 45–46, 49–51, 54, 56. Given the relationship of an assistant principal who is on tenuous probation, coupled with the fact that the principal had already aggressively retaliated against another assistant principal—by reassigning him to the "Rubber Room" for complaining about Gure-Perez's proclivity for racist thinking, Compl. ¶ 51—plaintiff has satisfied the burden of establishing Gure-Perez's awareness of a protest. She appropriately brought to the defendant's notice her objection to discriminate on the basis of race. *Cf. Stoler v. Inst. for Integrative Nutrition*, No. 13-CV-1275, 2013 WL 6068598, at \*13 (S.D.N.Y. Nov. 18, 2013) (citing *Albunio v. City of New York*, 16 N.Y.3d 472, 479 (N.Y. 2011) (finding that jury could conclude that employer was aware of plaintiff's protected activity where plaintiff stated that employer's treatment of gay coworker "was wrong" even though she "did not say in so many words that the coworker was a discrimination victim")).

*Third*, Gure-Perez ultimately succeeded in materially and adversely changing the terms and conditions of Villavicencio's employment. *See supra* Part V.D.2.c. The transfer to P.S. 191, Compl. ¶¶ 35–36, was "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Joseph*, 465 F.3d at 91. Villavicencio could no longer function as an assistant principal and her salary was reduced. *See* Hr'g Tr., Oct. 24, 2014.

*Fourth*, Villavicencio has sufficiently alleged a causal connection between her protected activity and her dismissal as assistant principal. *See supra* Part V.D.2.d. She was dismissed within less than two months of refusing to re-observe two African American teachers whom she had rated "Satisfactory." Compl. ¶¶ 14, 35. From the moment Villavicencio refused to file false reports on these African American teachers, Gure-Perez started a campaign to terminate Villavicencio's employment as assistant principal. *See* Compl. ¶¶ 21, 23–27, 29–32.

*Fifth*, Villavicencio has sufficiently established pretext. *See supra* Part V.D.4. A rational jury could find that "but-for" Villavicencio's refusal to discriminate, Gure-Perez would not have demoted her and had her transferred to another school. While dismissal due to poor performance would be a legitimate non-discriminatory reason for terminating an employee's position, a genuine issue of material fact exists as to whether retaliation was the "but-for" cause of Villavicencio's dismissal. This issue is not properly resolved on a motion for summary judgment.

Defendant's motion for summary judgment regarding Villavicencio's Section 1981 claim is denied.

## VII. Conclusion

Defendant's motion for summary judgment is granted on Villavicencio's Section 1983 claim. It is denied on her Section 1981 claim.

Trial is set for January 27, 2015. A jury will be selected before a magistrate judge at 9:30 a.m. on January 26, 2015.

*In limine* motions will be heard on January 20, 2015 at 10:00 a.m.

By January 13, 2015, the parties shall submit to the court proposed jury charges and verdict sheets, *in limine* motions, and any supporting briefs; they shall exchange and file with the court: (1) lists of pre-marked exhibits proposed for use at trial, together with copies of all exhibits; (2) lists of proposed witnesses together with brief summaries of their proposed testimony; and (3) stipulations with respect to all undisputed facts.

Disputes related to briefing schedules or discovery are respectfully referred to the magistrate judge. Either party may seek further discovery from the magistrate judge in view of the issues to be tried pursuant to this order.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date:   October 30, 2014
        Brooklyn, New York